CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

NOV 25 2009

JOHN F. CORCORAN, CLERK
BY: H McDonaCo
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SAMMY RAY OYLER,<br>    Plaintiff, | Civil Action No. 7:09-cv-00235 |
| v. | **MEMORANDUM OPINION** |
| MR. J. GARMAN, et al.,<br>    Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Sammy Ray Oyler, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. §§ 1983, 2000cc-1 and with jurisdiction vested in 28 U.S.C. §§ 1343, 1331. Plaintiff alleges that the defendants violated his constitutional rights to religious book and CD orders, private mail, housing classification, and access the courts. After the court requested a waiver of service of process from the defendants, plaintiff filed an amended complaint, which was served on the defendants, and a motion to amend the amended complaint. Defendants filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant in part plaintiff's motion to amend his amended complaint and grant the defendants' motion for summary judgment.

I.

A.    Religious Book and CD orders.

Plaintiff submitted a property and publications form on December 17, 2006, to order ten compact disks ("CDs") and a subscription to the newsletter, "New Insights."[1] The Foundation for Human Understanding ("FHU") publishes New Insights and the CDs because the FHU publishes all the religious materials made by Roy Masters, who has a radio talk-show, "Advice

---

[1] Plaintiff previously ordered and received some of Masters' materials from FHU while imprisoned at another VDOC facility. (Am. Compl. ¶ 4.)

Line." Plaintiff, a "non-denominational believer in God and/or a Supreme being," began listening to Masters' radio program in 2000. (Am. Compl. (docket #8) ¶¶ 1-7.)

Defendant J. Davis, a property officer, disapproved the request and stated that FHU was not an approved vendor for CDs. (Id. ¶¶ 8-9.) Plaintiff raised the issue with defendant C. Rife, a counselor, who advised plaintiff to discuss the matter with the property officers. (Id. ¶¶ 10-11.)

On June 1, 2008, plaintiff submitted a property form to order a two-CD set from the FHU titled, "Reprogrammed by the Light" and a book titled "Finding God in Physics." (Id. ¶ 12.) Plaintiff did not receive a response to the request and filed an informal grievance. (Id. ¶ 13.) Defendant Webb, another property officer, responded and stated that the FHU was not on the list of approved religious vendors. (Id. ¶ 14.) Plaintiff appealed his grievance to defendant Warden Mathena, who determined the grievance unfounded, and to defendant Regional Director Huffman, who determined the grievance unfounded and advised plaintiff to ask Warden Mathena to add the FHU to the approved vendors list. (Am. Compl. ¶¶ 16, 17, 36-39.)

Plaintiff sent Warden Mathena that request on August 6, 2008, and resubmitted his June 1 purchase order on August 10, 2008. Defendant Hurt, another property officer, disapproved the request because the FHU still was not on the approved religious vendors list. However, Warden Mathena responded to plaintiff's request to have the FHU added to the list of approved religious vendors by advising him to submit a property and withdrawal form to him for his evaluation. (Id. ¶¶ 52-54.)

Plaintiff met with Counselor Rife on August 19, 2008, who told plaintiff that defendant Vass, the treatment program supervisor, was reviewing his order requests pursuant to Warden Mathena's direction. (Id. ¶ 58.) Plaintiff gave Rife advertising clippings of more items that he

2

wanted to order from the FHU and asked Rife to deliver the clippings to Vass. (Id. ¶ 59.) Plaintiff received a letter and invoice from the FHU on the same date. The letter informed plaintiff that he would receive a complimentary book, "The Secret Power of Words." Plaintiff promptly wrote Mr. Masters to inform him that plaintiff needed preapproval to receive the unsolicited book and plaintiff would update him if plaintiff received the book. (Id. ¶¶ 64-65.) Property Officers Hurt and Webb told plaintiff the next day that they had not yet received the book and that plaintiff would not receive the book even if they did. (Id. ¶ 67.) However, property officers Hurt and Webb delivered the book "The Secret Power of Words" to plaintiff on October 1, 2008. (Am. Compl. ¶ 140.)

Plaintiff requested an update on August 30, 2008 from Vass about his July order request. (Id. ¶ 86.) Plaintiff received Vass' response on September 8, 2008, which stated that Vass was still working on the request and would notify plaintiff of his decision. (Id. ¶¶ 104-05.) Plaintiff filed an informal complaint on September 23, 2008, to receive an update on Vass' progress. (Id. ¶ 119.) On October 17, 2008, plaintiff met with Rife and Vass who informed plaintiff that Warden Mathena agreed to place Mr. Masters and the FHU on the approved religious vendors list and plaintiff could order his items from the FHU. (Id. ¶ 162.)

On October 26, 2008, plaintiff submitted a request to order eight CDs and a book from the FHU. (Id. ¶ 168.) In response to his subsequent grievances, property officer Webb informed plaintiff on November 3, 2008, that defendant Barbetto, a KMCC operations officer, was reviewing his order request. Property officer Webb returned plaintiff's October 26 order request on December 30, 2008, saying the request was approved and plaintiff needed to contact Barbetto to order items from the FHU. (Am. Compl. ¶ 206.) Speaking to plaintiff the next business day,

property officer Webb told plaintiff to resubmit the order forms, which he did on February 8, 2009. (Id. ¶¶ 210-12.) Property officer Hurt approved the order on February 13, 2009, for the eight CDs and the book "Finding God in Physics." (Id. ¶ 213.) Several days later, plaintiff received a money order receipt that indicated $175.00 was taken from his account to pay for the order. (Id. ¶ 214.)

Plaintiff received his order from the FHU on March 3, 2009, but the box only included six CDs; it was missing the book "Finding God in Physics" and two CDs. (Id. ¶ 216.) Plaintiff asked property officer Hurt about the missing items, but Hurt told plaintiff to contact the vendor. (Id. ¶ 217.) Plaintiff filed a grievance about the missing CDs, and property officer Hurt responded, stating that the two CDs were disapproved due to them not appearing to be religious. (Am. Compl. ¶ 229.) However, the inventory receipt in the shipment did not reflect plaintiff's ordering those two missing CDs. (Id. ¶¶ 221, 230.) Moreover, the FHU received the money order paying for the entire order, not just the items it shipped. (Id. ¶ 236.)

Warden Mathena responded to plaintiff's subsequent refund request for the cost of the items he did not receive. Mathena said that prison staff did not disapprove the items and Barbetto's denial for re-ordering the two CDs was based on her assumption that plaintiff already received the CDs.[2] (Id. ¶¶ 241-42.) Mathena also indicated that the property officer's response that the two CDs were disapproved as unreligious was erroneous because it discussed a different order. (Id. ¶ 243.)

---

[2]Plaintiff submitted a second order to Barbetto on March 9, 2009, to purchase items from the FHU that included new items and re-ordered the two missing CDs. (Id. ¶¶ 223-24.) Barbetto returned the order two days later after disapproving the new orders for "The Manchurian Candidate" and "Devoted to Deception" as duplicate orders and disapproved "Dealing Correctly with Stress"; "Addicted to Drugs, Sex, and Alcohol"; "How to Win an Argument"; and "Brainwashing" as unreligious. (Id. ¶ 225.)

4

Plaintiff's complaint in this suit was docketed on June 18, 2009, but plaintiff received a letter and money order from the FHU a month later on July 20, 2009. (Id. ¶¶ 266, 268.) The letter said, "Dear Mr. Oyler, In February 2009, you mailed the [FHU] a money order for $175.00 for a book and several CDs. It has just come to my attention that two of the CDs were never sent to you. The items in the shipment you received came to a total of $122.00, so enclosed is a money order for $53.00." (Am. Compl. ¶ 269.)

B. Delays in Processing Private Mail.

Plaintiff also complains about the manner in which the defendants handled his outgoing and incoming private mail. Plaintiff deposited for mailing a letter to Mr. Masters via certified mail on August 19, 2008, thanking him for the notice of the FHU's intent to send plaintiff a complimentary book. (Id. ¶ 65.) Prison staff mailed the letter on August 20, 2008, and delivered the certified mail receipt to plaintiff the same day. (Id. ¶ 76.) Defendant Hall responded to plaintiff's grievance about the delay in mailing the certified mail by stating that the business office did not "cut it" the same day because mail to the recipient, the FHU, was not considered "legal mail." (Id. ¶ 80.)

Plaintiff also sent Mr. Masters correspondence via Express mail on August 26, 2008. (Id. ¶ 82.) Plaintiff received a receipt that funds from his prisoner trust account paid the postage for his express mail on September 2, 2008, and it was mailed the next day, September 3. (Id. ¶¶ 88, 94.)

C. Housing Classification.

Plaintiff was placed in segregation on November 5, 2008, because of an institutional investigation, but nobody told him why he was transferred to segregation. (Am. Compl. ¶¶ 179-

80.) Defendants Captain Kelly, Major Newberry, and Assistant Warden Kiser approved plaintiff's segregation change. (Id. ¶¶ 202-04.) Plaintiff thinks he was transferred because he turned over another inmate's mail to an institutional investigator. That inmate asked plaintiff to secretly mail a letter on his behalf that alleged that the KMCC intended to defraud a construction business working at the prison. (Id. ¶¶ 182-85.) The defendants conducted plaintiff's segregation hearing on November 6 and 13, 2008. (Id. ¶¶ 186, 191.) Plaintiff was released from segregation on November 15, 2008, but no one filed any infractions or charges against him. (Id. ¶¶ 200-01.) Plaintiff seeks relief against the defendants for unjustly taking away "his liberty." (Id. ¶¶ XLVIII - LI.)

    D.    Right to Access the Courts.

Plaintiff complained to the defendants about his need for typewriter ribbon for a case filed in the Eastern District of Virginia, Oyler v. Virginia Department of Corrections, et al., 3:08-cv-554 (E.D. Va.). (Am. Compl. ¶ 121.) Plaintiff also requested Counsel Rife to copy thirty pages of legal papers for that case. (Id. ¶¶ 122-26.) Plaintiff received his requested typewriter ribbon on September 26, 2008. (Id. ¶ 128.) Plaintiff filed a notice of voluntary dismissal in September 2009, that the United States District Court for the Eastern District of Virginia granted and dismissed civil action 3:08-cv-554 without prejudice. Plaintiff also filed a similar suit in this court in October 2008 that I dismissed the same month after granting plaintiff's motion for voluntary dismissal. (Id. ¶¶ 149, 177.) See Oyler v. Larry Huffman, et al., No. 7:08-cv-00545 (W.D. Va.).

    E.    Motion to Amend and Join Additional Defendants.

In his notice of appearance, defense counsel noted that "Ms. S. Hall (Mailroom

6

Personnel)" is likely KMCC employee S. Harr. Counsel accepted service of process on behalf of S. Harr but not for S. Hall." (Docket #13). I ordered plaintiff to substitute S. Harr for S. Hall or otherwise identify the location of S. Hall to accomplish service of process. (Docket #16.) In response, plaintiff filed a motion to amend his amended complaint. (Motion to Supplement Am. Compl. (docket #18).) Plaintiff corrects defendant Harr's name, and he also seeks to join J. Jabe, Deputy Director of the VDOC, and "Mr. Bailey," an intelligence officer for KMCC. (Id. 1.) Plaintiff complains that Jabe issued a new policy that considers non-music CDs as contraband. The policy also states that non-music CDs already in prisoners' possessions are "grandfathered in" and will not be considered contraband. (Id. ¶ 271.) The policy provides that institutional chaplains may possess non-music CDs and prisoners may use them under the direct supervision of chaplains or staff. (Id. ¶ 273.) Plaintiff complains that Bailey was responsible for putting him in segregation while investigating another inmate's attempt to tell a roofing company that KMCC was going to defraud it. (Id. ¶¶ 277-289.)

Federal Rule of Civil Procedure 15(a)(1)(A) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." If a party seeks to amend its pleadings in all other cases, it may only do so with the opposing party's written consent or my permission.[3] I should freely give leave when justice so requires" absent some reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)(2)). "Motions to amend

---

[3]The defendants have not consented to the proposed amendments.

are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991).

I must also consider the "more specific joinder provisions of Rule 20(a)" when a plaintiff files a motion to amend that seeks to join additional defendants. Hinson v. Norwest Financial South Carolina, Inc., 239 F.3d 611, 618 (4th Cir. 2001). The proposed additional defendants must have a right to relief asserted against them, "arising out of the same transaction, occurrence, or series of transactions or occurrences" and the claims must share some "question of law or fact common to" all of the defendants. Fed. R. Civ. P. 20(a)(2).

I deny plaintiff leave to join J. Jabe because he failed to establish standing to challenge the VDOC policy change. A plaintiff bears the burden to establish standing, which requires:

> [A]n injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical . . . .; a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court . . . .; [and] it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61(1992) (internal quotation marks and citations omitted). "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Id. at 563. Plaintiff fails to establish how the change in the non-music CD policy injured him because he does not allege that the policy prevented him from enjoying any particular non-music CD. Furthermore, any non-music CD he already owns is "grandfathered" and is not contraband subject to seizure. Therefore, plaintiff lacks standing to challenge the new non-music CD policy,

8

and his request to join J. Jabe for this claim is futile.[4]

Plaintiff's attempt to join Investigator Bailey is similarly futile because his attempts to litigate his placement in segregation for ten days fails to state a claim upon which relief may be granted. See, infra, II. C (dismissing housing classification claim because no due process violation). Therefore, any claims against Bailey would also be futile. Accordingly, I grant plaintiff motion to amend to substitute S. Harr for defendant S. Hall and deny the motion to amend in all other respects.

II.

A. Religious Book and CD orders.

Both the Religious Land Use and Institutionalized Person Act ("RLUIPA") and the First Amendment generally prohibit government officials from substantially burdening religious exercise. See Amend. I; 42 U.S.C. § 2000cc-1(a); Ford v. McGinnis, 352 F.3d 582, 593 (2d Cir. 2003) (defining "substantial burden" for First Amendment claims). To succeed on either a First Amendment or RLUIPA claim, plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion and (2) that the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). See Lovelace v. Lee, 472 F.3d 174, 198-99, n.8 (4th Cir. 2006).

Plaintiff fails to establish that the defendants substantially burdened his access to religious materials. Although plaintiff speculated in his original complaint that the defendants were harassing and frustrating his access to FHU religious publications, plaintiff acknowledged

---

[4]Plaintiff fails to satisfy any other element of standing because he fails to establish actual or imminent injury. The policy grandfathers plaintiff's existing non-music CDs and allows his to experience other non-music CDs through the chaplain's office.

9

in his amended complaint that the missing religious materials resulted from FHU's errors in fulfilling plaintiff's orders. Plaintiff used the proper administrative procedures to request the FHU be placed on the approved list of religious vendors, and the defendants granted his request and authorized his religious orders from the FHU. Even though plaintiff alleges that the defendants violated VDOC procedures by not promptly responding to his grievances, a claim that prison officials have not followed their own policies or procedures also does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Accordingly, plaintiff fails to state a claim upon which relief may be granted, and I dismiss this claim.

      B.      Delays in Processing Private Mail.

As a prison inmate, plaintiff retains certain First Amendment rights, including the right to send and receive mail. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989). Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (holding that isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable); Bryant v. Winston, 750 F. Supp. 733, 734 (E.D. Va. 1990) (holding that an isolated incident of mail mishandling, which is not part of any pattern or practice, is not actionable under § 1983).

Plaintiff fails to establish that the defendants intercepted or blocked his ability to send and

10

receive private mail. Plaintiff complains instead about the delay of several days between when he submitted parcels to the mail room staff for mailing and the date mail room staff processed mailed the parcels. For example, staff mailed plaintiff's certified letter the day after he submitted it and mailed his express mail five business days after he submitted it for mailing but only one day after plaintiff paid the postage. Plaintiff's complaints about the delay in the handling of two pieces of mail is not sufficient to allege a constitutional violation. Moreover, a constitutional violation does not occur even if prison officials did not follow their own policies or procedures. See Caceres, 440 U.S. at 741; Riccio, 907 F.2d at 1469. Accordingly, I dismiss this claim for failing to state a claim upon which relief may be granted.

C. Housing Classification.

An inmate does not have a constitutional right to be placed in a specific security or housing classification, and custodial classifications do not create a major disruption in a prisoner's environment. Sandin v. Conner, 515 U.S. 472, 486-87 (1995). States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . ." Id. at 484. In order to show the deprivation of a liberty interest regarding custody classifications, an inmate must show either that the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, or that the confinement creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint. Id. at 483-84.

Based upon the facts alleged, plaintiff's segregation for ten days did not exceed a

sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. See Beverati, 120 F.3d at 503 (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Nor does placement in segregation for ten days constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular housing unit or to be held in a specific security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"). Accordingly, plaintiff's placement in segregation for ten days during an institutional investigation does not allege a constitutional violation, and I dismiss this claim.

    D.    Right to Access the Courts.

To prove a violation of the right of access to the courts, a plaintiff must show (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of the plaintiff's pending or contemplated litigation. Lewis v. Casey, 518 U.S. 343, 350 (1996). Plaintiff's complaints about not being able to adequately prepare his documents for actions brought in this district and in the Eastern District of Virginia fail to state a claim because plaintiff was not prejudiced. Plaintiff voluntarily dismissed the cases, and the

courts granted the motions without prejudice. Accordingly, I dismiss this claim for failing to state a claim upon which relief may be granted.

III.

For the foregoing reasons, I grant plaintiff's motion to amend in part to add Ms. S. Hall as a defendant and to terminate S. Harr as a defendant and deny it in part in all other respects. I also grant the defendants' motion for summary judgment, deny pending motions as moot, and strike the case from the active docket of the court.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER**: This 25th day of November, 2009.

*/s/ Jackson L. Kiser*
Senior United States District Judge